IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Barry A. Harrison, Wesley T. Roach, and Dwayne M. Hawkins, | ) ) ) | C/A No. 3:12-1754-JFA-PJG |
| Plaintiffs, | ) ) ) | **REPORT AND RECOMMENDATION** |
| v. | ) ) | |
| South Carolina Department of Mental Health, | ) ) ) | |
| Defendants. | ) ) | |

     Plaintiffs Barry A. Harrison, Wesley T. Roach, and Dwayne M. Hawkins (collectively "Plaintiffs") filed this employment action alleging discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., against their employer, Defendant South Carolina Department of Mental Health ("the Department"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF Nos. 34 & 35.) The plaintiffs filed a response in opposition (ECF Nos. 42 & 43), and the defendant replied (ECF No. 48). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

     The following facts are either undisputed or are viewed in the light most favorable to Plaintiffs, to the extent they find support in the record. Plaintiffs, who are all African American, are employed by the Department as Trades Specialist IVs within the Building Maintenance section of Physical Plant Services. In 2009, Plaintiffs filed a civil action against the Department alleging

PJG

disparate pay from similarly situated white co-workers in 2008, which was resolved by agreement of the parties in December 2010. See C/A No. 3:09-2625-MJP-PJG. As part of the settlement agreement, (1) the Plaintiffs jointly would receive $100,000 from the South Carolina Insurance Reserve Fund on behalf its insured (the Department) as non-wage based compensation; (2) subject to approval by the South Carolina Budget and Control Board's Office of Human Resources, each Plaintiff would receive a $4,000 increase in their respective salaries retroactive to June 2, 2006 with corresponding employer contributions to the South Carolina Retirement System on behalf of each Plaintiff; and (3) each Plaintiff would resign his employment with the Department effective January 31, 2016.

Since that time, in July 2011, Building Maintenance underwent a reorganization as a result of a reduction in funding for the Department. Jim Berry, the head of Physical Plant Services for the Department, consulted with managers and Human Resources Director Eleanor Odom to develop proposals to absorb the cutback in funding, of which Building Maintenance, as the largest component of Physical Plant Services, absorbed the largest amount. Berry, Building Maintenance Director Buddy Watkins, and the Physical Plant Services finance manager worked together to formulate a plan that ultimately included, in pertinent part, consolidating four general maintenance shops into two, resulting in the elimination of two supervisory positions and the reassignment of employees in the closed shops to one of the remaining two shops. Berry and Watkins indicated that the two strongest shop supervisors (James Gentry and Randell Oswalt) were retained to head the consolidated general maintenance shops. The other two supervisors were reassigned to non-supervisory positions at their same rate of pay. One was reassigned from maintenance to energy plant reduction (Kevin Kaminer). The other was reduced to three-quarters time and moved to a

building manager function (Darrell Kindle). As a result of the reorganization, Plaintiffs were all reassigned from the now-eliminated Crafts-Farrow/Morris Village maintenance shop. Plaintiff Harrison was reassigned to the shop in downtown Columbia, and Plaintiffs Hawkins and Roach were reassigned to the consolidated Northeast Maintenance shop.

Further, in October 2011, the Department made compression-based adjustments to the salaries of Trades Specialist IVs with fifteen or more years of service, which Plaintiffs did not receive. When questioned about this action, the Department informed the Plaintiffs that they had already received their salary increases, which they had been receiving since January 2011 pursuant to the settlement agreement.

Thereafter, Plaintiffs filed the instant action raising claims of disparate treatment and retaliation based on the occurrences since the conclusion of their previous case, which they later amended to include additional allegations following the filing of this action.

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger



v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Avenues of Proof in Title VII Discrimination Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence.  A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof.  First, he may establish his claims by presenting "present sufficient evidence, direct or circumstantial, 'for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for any employment practice.' " Hill

v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*) (quoting Desert Palace Inc. v. Costa, 539 U.S. 90 (2003)).

Alternatively, a plaintiff may rely on circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the

decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49.

Importantly,

> [r]egardless of the type of evidence offered by a plaintiff as support for [his] discrimination claim (direct, circumstantial, or evidence of pretext), or whether [he] proceeds under a mixed-motive or single-motive theory, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves, 530 U.S. at 153 (2000); see Burdine, 450 U.S. at 256. To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that "the protected trait . . . actually motivated the employer's decision." Reeves, 530 U.S. at 141 (internal quotation marks omitted). The protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." Id. (internal quotation marks and alterations omitted); cf. Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination); Koski v. Standex Int'l Corp., 307 F.3d 672, 678 (7th Cir. 2002) (noting that the pertinent inquiry is whether the

decisionmaker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria).

Hill, 354 F.3d at 286; see also Merritt, 601 F.3d at 294-95 ("Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination.").

**C.     Plaintiffs' Claims[1]**

**1.     Disparate Treatment**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Generally, to establish a *prima facie* case of discrimination, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Plaintiffs allege disparate treatment based on their race with regard to their wages, in failing to promote them, and with regard to other terms and conditions of employment. In support of these claims, Plaintiffs appear to argue that the Department (1) provided salary increases in fall 2011 to the Plaintiffs' comparators but not the Plaintiffs; (2) failed to promote Plaintiffs during the reorganization in July 2011 to the four positions given to Gentry, Oswalt, Kaminer, and Kindle; the

---

[1] To the extent the defendant argues that Plaintiffs failed to exhaust their administrative remedies in relation to their disparate treatment claims, the court finds that such claims were sufficiently stated in their charges to satisfy the exhaustion requirement. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).



supervisory position over the HVAC unit given to Stephen Morgan; or the supervisory position given to Curt Morgan;[2] and (3) involuntarily transferring Plaintiff Harrison during the reorganization.[3] Additionally, Plaintiffs Hawkins and Roach allege that Stephen Morgan and Curt Morgan verbally intimidated them around April 2013 and on June 25, 2013.  These alleged comments at issue appear to include: a statement by Stephen Morgan that "I just want you all to know I'm the bad guy now, and you don't want to be sitting across the table from me.  And just like you [are] watching us, we're watching you"; Curt Morgan's statement that "I want you to know I would have [taken] the job up front, but I let Stephen [have] that because I am more of a backwoodsman . . ."; and Stephen Morgan's instruction that they were not to be seen on any other job sites, except their base job site, without permission.

      a. **Disparate Pay Allegations**

With regard to Plaintiffs' wage allegations, as argued by the Department, Plaintiffs' claims are belied by their own allegations and testimony.  Specifically, the undisputed testimony reveals that

---

[2] Further stemming from these actions is the Plaintiffs' argument that the Department failed to promote them to positions awarded to Stephen Morgan and Curt Morgan in April 2013 because they lacked the experience that the Morgans acquired in the supervisory jobs they were given in July 2011 that were not offered to the Plaintiffs.

[3] To the extent that Plaintiffs are attempting to raise an additional allegation that the Department failed to promote Plaintiffs to a supervisory position in the plumbing unit months prior to the reorganization, such a claim is not properly before the court.  Moreover, even if it were, Plaintiffs cannot satisfy the *prima facie* test as none of the Plaintiffs applied for the open position. See Williams v. Giant Food, Inc., 370 F.3d 423, 430 (4th Cir. 2004).  Although Plaintiffs argue that the job posting was drafted such that only current employees of the Department's plumbing shop, the posting and evidence presented contradicts this assertion.  Additionally, if that were a requirement for the position, "[t]he employer has the right to fix the qualifications that are 'necessary or preferred' in selecting the employee for promotion, and, in order to make out a *prima facie* case, a plaintiff must establish that [ ]he meets these qualifications." E.E.O.C. v. Fed. Reserve Bank of Richmond, 698 F.2d 633, 671-72 (4th Cir. 1983), rev'd in part on other grounds sub nom. Cooper v. Fed. Reserve Bank of Richmond, 464 U.S. 932 (1983).



the salary increases were given to both African American and white Trades Specialist IVs. Additionally, Plaintiffs' charges with the Equal Employment Opportunity Commission allege that each Plaintiff was "denied equal wages in that all Trade[s] Specialist IV employees received a one time wage increase for employees with 15 years and above." (ECF No. 43-6.) Thus, Plaintiffs cannot show that the decision not to give Plaintiffs additional salary increases in fall 2011 was motivated by race. Moreover, the court agrees with the Department that the evidence indisputably shows that the reason that Plaintiffs did not receive an additional increase in October 2011 was because they had already received the salary compression adjustment as a result of their settlement in December 2010. In fact, Plaintiffs received additional monies as their salary increases were retroactive to June 2006, while the other Trades Specialist IVs received only a prospective increase starting in October 2011. In fact, while the Department had been working on a plan to address the salary issues among Trades Specialist IVs, Plaintiffs' 2009 lawsuit provided the catalyst for the Department's ultimately making the compression-based adjustments to the salaries of long-time Trades Specialist IVs in October 2011. The Department informed Plaintiffs that they did not receive the increases because they received them effective January 2011.

      b.    **Failure to Promote**

With regard to a claim based on an alleged failure to promote, the *prima facie* case generally requires the plaintiff to show: (1) he is a member of a protected class; (2) his employer had an open position for which he applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. <u>Evans v. Technologies Applications & Service Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996); <u>see</u> <u>also</u> <u>Anderson v. Westinghouse Savannah River Co.</u>, 406 F.3d 248, 268 (4th Cir. 2005).



As discussed above, the reorganization resulted in two of the existing shop supervisors—Gentry and Oswalt—remaining as shop supervisors, and the reassignment of the two other supervisors—Kaminer and Kindle—to non-supervisory positions. Berry testified that while Oswalt and Gentry assumed additional responsibilities, they remained at their existing pay and grade level—Trades Specialist V. Courts in the Fourth Circuit have recognized that the lateral transfer of an employee in accordance with company policy to fill a vacant position in another area refutes a plaintiff's claim that there was an open position for which he could apply, defeating the *prima facie* case. See Woodard v. Lehman, 717 F.2d 909 (4th Cir. 1983); Hickman v. Washington Gas Light Co., No. 95-1867, 1996 WL 331158, at *1 (4th Cir. June 18, 1996) (Table); White v. C & P Tel. Co. of Md., No. 88-2512, 1989 WL 27452, at *1 (4th Cir. Mar. 15, 1989) (Table); Foster v. BNP Residential Properties Ltd. P'ship, C/A No. 2:06-2440-PMD-RSC, 2008 WL 512788, at *11-12 (D.S.C. Feb. 25, 2008); see also Burton v. S.C. Dep't of Transp., C/A No. 3:11-00009-JFA, 2013 WL 1282054, at *2 (D.S.C. Mar. 16, 2013) ("Moreover, a transfer of both a position and the employee to fill the position from one department to another is at least arguably different than an already-established or newly-created position in a particular department becoming or being vacant. For a position to have been 'open,' it must have been one 'for which the employer was seeking applicants,' which was not the case here.") (citing McDonnell Douglas Corp., 411 U.S. at 802). The unrefuted evidence demonstrates that these positions were not open but were lateral transfers pursuant to the reorganization. Plaintiffs' arguments to the contrary are unsupported and unavailing.

Similarly, the Department has presented evidence that as part of the reorganization, Stephen Morgan and Curt Morgan were given additional duties without any change in pay and grade level. Plaintiffs' position that the additional duties were actually a promotion is wholly unsupported.



Moreover, with regard to Plaintiffs' allegations that the Department failed to promote them to the positions awarded to Stephen Morgan and Curt Morgan in April 2013 because they lacked the experience that the Morgans acquired from the additional supervisory responsibilities they were given in July 2011, it is undisputed that Plaintiffs did not apply or seek to apply for the positions and they cannot show they were qualified for the positions.  See Williams v. Giant Food, Inc., 370 F.3d 423, 430 (4th Cir. 2004); see also   E.E.O.C. v. Fed. Reserve Bank of Richmond, 698 F.2d 633, 671-72 (4th Cir. 1983) (holding that an employer has the right to establish the qualifications that are "necessary or preferred" for a position and the plaintiff must show not only that he meets these qualifications to establish a *prima facie* case but also that he is superior to the selected candidate to establish pretext), rev'd in part on other grounds sub nom. Cooper v. Fed. Reserve Bank of Richmond, 464 U.S. 932 (1983).

        c.    **Other Allegations**

Finally, Plaintiffs' allegations that they were denied "substantially exceeds" performance ratings, that an individual that formerly harassed Plaintiff Hawkins became the supervisor of Plaintiffs Hawkins and Roach following their transfer, and that Plaintiff Harrison was involuntarily reassigned do not satisfy the *prima facie* case for race discrimination, as none of these actions can show that Plaintiffs suffered an adverse employment action under controlling precedent.  With regard to a disparate treatment claim, an adverse employment action is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.' " Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)).  It must constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or



a decision causing a significant change in benefits. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Moreover, courts have specifically rejected allegations that reassignment is actionable under Title VII. See Holland, 487 F.3d at 219 ( "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action.") (internal quotation marks & citation omitted); Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir. 1999) (concluding that "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect" on the plaintiff and explaining that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position"). Further, Plaintiff Hawkins's assertion that Gentry used a racial epithet approximately twenty years ago and before he was a supervisor does not otherwise make the reassignment of Plaintiffs Hawkins and Roach an actionable adverse employment action. See, e.g., Martin v. Locke, 659 F. Supp. 2d 140, 148 (D.D.C. 2009) (holding that the lateral transfer of the plaintiff to a difficult supervisor who is "reputed to be 'difficult' and has been 'accused' of race and gender discrimination in the past does not materially affect the terms, conditions, or privileges of employment"). Finally, a performance appraisal that is lower but still satisfactory is not an adverse employment action. See James, 368 F.3d at 377 ("[A] poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.' An evaluation merely causing a loss of prestige or status is not actionable.") (internal citations omitted); Johnson v. Midlands Technical College Found., C/A No. 3:08-803-JFA-PJG, 2009 WL 3063048, at * 11 (D.S.C. Sept. 21, 2009) (finding that a plaintiff's

complaint that her supervisor downgraded his evaluation of her performance from "exceeds expectations" to "satisfactory" is not material, as it did not affect her remuneration).

### d.    Pretext

Even if Plaintiffs could demonstrate a *prima facie* case of disparate pay or discriminatory failure to promote, their claims fail because they cannot demonstrate that the Department's proffered legitimate, nondiscriminatory reasons are a pretext for race discrimination. The Department has stated that Plaintiffs' salaries were not increased because they received their raises earlier that year as the result of their settlement and that the other Trades Specialist IVs' salaries were increased as a result of the compression study. Further, the Department stated that the positions at issue were the result of transfers pursuant to the reorganization.

Plaintiffs have presented no compelling argument challenging these proffered legitimate, nondiscriminatory reasons. Specifically, Plaintiffs appear to focus on data that they believe demonstrates that the Plaintiffs have long been subjected to underpayment on the basis of their race, as well as arguments that the Department placed two employees who made offensive racial comments to the Plaintiffs into supervisory positions, that the Plaintiffs have been denied consideration for promotion to new positions, and that Plaintiffs have been "written out" of vacant positions. The court finds that many of these arguments consist of speculation and subjective belief, which are insufficient to establish a claim of race discrimination. See Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case.") (internal quotation marks omitted). Moreover, Plaintiffs' "evidence" concerning historical wage payments appears to be based on Plaintiffs' calculations that are offered without context, and statistics without



context are insufficient to show pretext.  See Carter v. Ball, 33 F.3d 450, 457 (4th Cir. 1994) (stating that judges may disregard statistical evidence offered without expert testimony as to the methodology or relevance to the plaintiff's claim); see also Vaughan v. MetraHealth Cos., Inc., 145 F.3d 197, 203 (4th Cir. 1998), overruled in part on other grounds by Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000); see generally Moultrie v. Martin, 690 F.2d 1078, 1082-83 (4th Cir. 1982) (discussing the appropriate statistical methodology to use when drawing conclusions from statistical evidence).  Moreover, even if the Department's reorganization decisions were unwise or incorrect, Plaintiffs have failed to produce any evidence that the reason was a pretext for race discrimination.  See DeJarnette v. Corning, Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) (stating that "Title VII is not a vehicle for substituting the judgment of a court for that of the employer" and that "this Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination") (internal quotation marks and citations omitted); Henson v. Liggett Corp., 61 F.3d 270, 277 (4th Cir. 1995) (ADEA) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including work place reorganization, as long as the employer does not [discriminate].").

Based on all of the foregoing, Plaintiffs cannot show on the record before the court a reasonable inference that the Department's reasons for its actions were pretextual.  Even if Plaintiffs' evidence were found sufficient to reject the Department's explanation, the court concludes that based on the evidence in the record, no reasonable jury could find that the challenged actions by the Department were discriminatory.  See Reeves, 530 U.S. at 148.  Plaintiffs cannot ultimately prove that they were the victims of intentional discrimination.  See Merritt, 601 F.3d at 294-95.

### 2.  Retaliation

Plaintiffs allege that many of the above actions also constituted unlawful retaliation. Specifically, Plaintiffs argue that they were denied an increase in wages in October 2011 and were denied promotions in July 2011 and in April 2013. Plaintiffs also appear to argue that in retaliation for their prior protected activity, Plaintiffs Hawkins and Roach were assigned to a supervisor that had previously used racial epithets towards Plaintiff Hawkins, that Plaintiff Harrison was involuntarily transferred, and that Stephen Morgan and Curt Morgan intimidated Plaintiffs Hawkins and Roach around April 2013 and on June 25, 2013.

Claims of retaliation are also analyzed under the McDonnell Douglas burden-shifting framework. See Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550-51 (4th Cir. 2006); Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000). To establish a *prima facie* case of retaliation, a plaintiff typically must show: (1) that he engaged in protected activity; (2) that his employer acted adversely against him; and (3) there was a causal connection between the asserted adverse action and the protected activity. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).

To establish that they suffered an adverse action with respect to a retaliation claim, Plaintiffs must show that the adverse action was objectively material. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). The United States Supreme Court has held that Title VII's prohibition of adverse employment action taken in retaliation for protected activity "is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 64. Rather, "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." Id. at 67. However, the anti-retaliation provision does not shield an

employee from all retaliation, but rather only from retaliation that produces injury or harm. Id. Accordingly, to fall within the provision's protection, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). A plaintiff must show material adversity to separate the significant harms from the trivial, as "Title VII . . . does not set forth 'a general civility code for the American workplace.'" White, 548 U.S. at 68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). The test is an objective one and considers the reactions of a reasonable employee. White, 548 U.S. at 68. Further, "[c]ontext matters," and the significance of the adverse action must be analyzed under the circumstances particular to the plaintiff. See id. at 69. Thus, "an 'act that would be immaterial in some situations is material in others.'" Id. (quoting Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 661 (7th Cir. 2005)). The standard analyzes the challenged retaliatory act, not the underlying conduct that gave rise to the Title VII complaint. White, 548 U.S. at 69. The question is whether the challenged action was material from the perspective of a reasonable person in the plaintiff's position. Id. at 69-70.

Applying these standards to the allegations and record in this matter, Plaintiffs cannot demonstrate that their transfers or the alleged intimidation were materially adverse; rather, they are "trivial harms." White, 548 U.S. at 68; see also Mahoney v. Donovan, 824 F. Supp. 2d 49, 62 (D.D.C. 2011) ("An employer's instruction that an employee follow a particular course of action or face the consideration of discipline [] would not dissuade a reasonable employee from pursuing an EEO complaint."); Charlot v. Donley, 2014 WL 1319182, at *10, *13-14 (D.S.C. 2014) (concluding

that a two-week suspension that was threatened but not imposed was not a materially adverse action and that a transfer from one supervisor "to an even more abusive supervisor" was not actionable as retaliation). Similarly, for the reasons stated above, while failing to promote a plaintiff may be an adverse action, under the circumstances of this case Plaintiffs cannot show an adverse action because many of the positions were not open or available positions for promotion or the Plaintiffs did not apply for them.

Moreover, even if the Plaintiffs could establish a *prima facie* case of retaliation for any of the above actions, for the same reasons discussed above, Plaintiffs cannot show on the record before the court a reasonable inference that the Department's reasons for its actions were pretextual. Even if Plaintiffs' evidence were found sufficient to reject the Department's explanation, the court concludes that based on the evidence in the record, no reasonable jury could find that the challenged actions by the Department were discriminatory and the Plaintiffs cannot ultimately prove that they were the victims of intentional discrimination. See Reeves, 530 U.S. at 148; Merritt, 601 F.3d at 294-95.

## RECOMMENDATION

Based on the forgoing, Plaintiffs cannot establish that they were the victims of unlawful discrimination or retaliation. The court therefore recommends that the Department's motion for summary judgment (ECF No. 34) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 15, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).